**CHARLES E. BROHAWN & BROS., INC., Plaintiff Below, Appellant,**

v.

**EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted Oct. 9, 1979.

Decided Dec. 10, 1979.

---

Daniel F. Wolcott, Jr., Donald J. Wolfe, Jr. of Potter, Anderson & Corroon, Wilmington, for plaintiff below, appellant.

F. Alton Tybout of Tybout & Redfearn, Wilmington, for defendant below, appellee.

Before HERRMANN, C. J., McNEILLY and HORSEY, JJ.

McNEILLY, Justice:

Appellee, Employers Commercial Union Insurance Company (Employers), issued three insurance policies to Charles E. Brohawn & Bros., Inc. (Brohawn), a general contractor, insuring it against "property damage" caused by an "occurrence." The City of Dover contracted with Brohawn to construct a concrete pedestal designed to support a steam generator at the McKee Run Generating Station. The city allegedly suffered substantial monetary loss because

of defects which were found in the pedestal constructed by Brohawn. It was alleged that, due to Brohawn's negligence and breach of contract, the pedestal was not properly erected and that it crumbled, causing delay in the completion of the generating station.

Another contractor involved in the project sued Dover for losses allegedly sustained as a result of the delay.[1] The City, in turn, initiated a third-party action (the Dover action) against the contractors it believed liable for the delay. It alleged against Brohawn that it failed to construct the pedestal in a workmanlike manner, breached its warranty and contract and was negligent in testing the pedestal and its components.[2] All the damages alleged against Brohawn flowed from the unavailability and loss of use of the pedestal pending reconstruction by Brohawn. When protection was sought under the insurance policies, Employers took the position that it had no obligation to Brohawn under the insurance contracts with respect to the claims in the Dover action. It refused to defend the suit on the ground that there was no coverage for alleged damages under the insurance policies.

The appellant sought to resolve the conflicting interpretations in an action for declaratory judgment. The Superior Court, on cross motions for summary judgment, held that the damages alleged by Dover, et al., were "property damage" resulting from an "occurrence," but also held that coverage was excluded under the terms of all three policies. Brohawn has settled the Dover action, but seeks, in this appeal from Superior Court, reimbursement for the amounts paid in settlement and for the costs, including attorneys' fees of defending the Dover action. Brohawn does not seek coverage under a separate performance bond, as the bond, unlike the insurance policies, requires Brohawn to reimburse Employers for any payments.

---

1. The alleged cost overruns were "additional labor and material costs, loss of labor productivity and interest on retainages . . . .".

2. In addition to the damages alleged by the contractors, Dover alleged damages of the loss of revenues from the delay in commencing operation of the plant.

*Inter alia,* Brohawn appeals the decision of the Superior Court that the "sistership exclusions"[3] in each of the three policies excludes coverage for these losses and the holding that Employers had no duty to defend Brohawn in the Dover action. Brohawn argues that there was coverage under the policies, that coverage was not excluded, and that, in any event, Employers had a duty to defend Brohawn in the Dover action. For the reasons below, we affirm.

At trial and on appeal there has been a considerable difference of opinion as to whether the damages alleged by Dover, et al., were "property damage" caused by an "occurrence," as defined in the policies. The position of neither party is without merit. The policy definitions of "property damage"[4] and "occurrence,"[5] when applied to the present facts do not yield a single unequivocal answer about the existence or nonexistence of coverage.

The Court below decided this issue in favor of Brohawn under the public policy which construes ambiguous contract language against the insurance carrier who wrote the policy. See *Steigler v. Insurance Company of North America,* Del.Supr., 384 A.2d 398 (1978). While we continue to support this policy, we decline to reach this issue. Instead, for the purposes of our decision, we will assume that the damages in question were "property damage" caused by an "occurrence." This assumption leaves two questions. First, was coverage validly excluded? Second, was Employers under a duty to defend Brohawn in the Dover action?

## II

Brohawn advances many arguments supporting the non-applicability of various exclusions of coverage in the three policies to this occurrence. We will consider only one. Each of the three policies expressly states that the insurance will not apply

"to damages claimed for the withdrawal, inspection, repair, replacement or loss of use of the named insured's products or work completed by or for the named insured or any property for which such products form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein." Comprehensive General Liability Policy, exclusion (p); Contractual Liability Policy, exclusion (1); Umbrella Policy, exclusion (c)(iii).

Brohawn argues that the sistership exclusions quoted above operate only to exclude damages resulting from the withdrawal of similar products other than the one in which the defect was discovered. Employers argues that the clause excludes coverage for damages resulting from the withdrawal or repair of any defective product, where the defect has been discovered and the product withdrawn or repaired prior to the product actually failing while in use. We agree with Employers' interpretation.

"The plain meaning and intent of . . . [this exclusion] is that while the insurance covers damages for bodily injuries

---

3. The name of these exclusions is derived from their historical origin. When a defect is suspected to be responsible for an aircraft accident, all other aircraft of that type are grounded pending investigation. The potential damages arising from the loss of use of the sisterships are enormous. The exclusion was originally designed to exclude coverage for damages arising from the defect, other than those arising from the defect in the aircraft that was involved in the accident.

   We are aware that the language in the present exclusions, quoted later in the text of this opinion, was not intended for that limited purpose. However, we will, for convenience, continue to refer to those clauses as sistership exclusions.

4. "Property damage" is defined in the policy as:

   "(1) Physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or

   "(2) Loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

5. "Occurrence" is defined in the policy to mean "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

and property damage caused by the product that was defective or failed, it was never intended that the insurer would be saddled with the cost of preventing such defects or failures any more than it was intended that the insurer would pay the cost of avoiding the defect in the first place *or preventing the first failure if [prior to that] the product had been discovered to be in a defective or dangerous condition* . . . ." Long, I The Law of Liability Insurance, § 11:11 (1978) (emphasis added).

In other words, the discovery of a defective product, without more, is not an event for which the insurer is providing protection. Thus, any damages flowing from the discovery alone are excluded.

The concrete pedestal was designed and constructed solely as a platform for a steam generator. Until a generator was mounted, the pedestal could not be said to have been in use. The defect in the pedestal was discovered prior to the mounting of the generator. Consequently, we conclude that all the damages alleged in the Dover action resulted from the withdrawal and repair of a defective product; the defect having been discovered prior to the product failing while in use. We hold that coverage for those damages is excluded under the sistership exclusions.

### III

■ We turn now to Brohawn's contention that Employers was obligated to defend the Dover action on Brohawn's behalf. Brohawn correctly asserts that an insurer's duty to defend is broader than the substantive coverage afforded under its policies. In *Continental Casualty Co. v. Alexis I. duPont Sch. Dist.,* Del.Supr., 317 A.2d 101, 103 (1974), this Court stated "an insurer's duty to defend is limited to suits which assert claims for which it has assumed liability under the policy. . . . The test is whether the complaint alleges a risk within the coverage of the policy." (citations omitted).

This principle does not require that a defense be provided in cases where, interpreting the plaintiff's allegations in the light most favorable to the insured, none of the alleged grounds for recovery would be covered under the policy. In their broadest sense, all the allegations of Dover, et al., were that either the pedestal was constructed in a defective manner or that defective materials were incorporated into the pedestal. The entirety of the allegations were that the pedestal was inherently defective when built and that it had to be destroyed and rebuilt before it could be used. There was no allegation that the pedestal became defective as a result of outside force or that it failed while in use.

As previously noted, damages resulting from defective products, but not resulting from their failure while in use, are not covered under any of the policies. Thus, Employers did not have a duty to defend the Dover action, because any possible ground for recovery by Dover would have fallen within the sistership exclusions.

AFFIRMED.